## KERR v. JONES.

The office of colonel of volunteers, as now existing, and the office of reporter of the decisions of the Supreme Court of *Indiana*, within the meaning of the ninth section of the second article of the constitution of said State, are lucrative offices.

The office of colonel of volunteers in the military service of the *United States*, as now organized, is not an office in the militia.

The acceptance, therefore, of the latter office, by the incumbent of another lucrative office, under the laws of *Indiana*, would vacate the former.

MOTION in the *Supreme Court* for direction to the clerk.

PERKINS, J.—In October, 1860, *Benjamin Harrison, Esq.*, was elected reporter of the decisions of the Supreme Court

of *Indiana*, for the term of four years, pursuant to the constitution and statutes of the State.

He accepted the office.

On the 7th of August, 1862, he was commissioned as colonel of the 70th regiment of *Indiana* volunteers, in the army of the *United States*; he accepted the office, and, soon afterward, departed with his command, to enter upon active service, in a remote part of the Union, having, in the meantime, appointed a deputy reporter.

In October following, being last October, *Michael C. Kerr*, *Esq.*, was elected by the voters of the State of *Indiana*, at the annual State election, reporter, to fill the office assumed to have been vacated by *Mr. Harrison*, on his acceptance of the office of colonel of volunteers, as above stated; and, on the 13th day of November, 1862, said *Kerr* was duly commissioned, as reporter, by the executive of the State.

Soon afterward, *Mr. Kerr* called upon *John P. Jones, Esq.*, the clerk of the Supreme Court, for the records and opinions in decided causes, to enable him to proceed with his duties as reporter, and received from him all that were in his office; but the clerk was not in actual possession of a few of the records and opinions; he had delivered them, in good faith, to *Mr. Caven*, who claimed to be *Mr. Harrison's* deputy. We may here remark, in passing, that we think the office of reporter, one of personal trust, that can not be deputed to another by the incumbent of it, at common law. The duties of the office require honesty, industry, general and legal education, and a quick, clear, and discriminating mind, in their performance. *Mr. Caven* refused to return the records and opinions he had received from *Mr. Jones*, whereupon *Mr. Kerr* moved the Supreme Court for an order upon the clerk to furnish the records and opinions to him, as reporter.

*Mr. Caven* had not attempted to qualify as deputy, till after *Mr. Kerr* had qualified as reporter.

If the acceptance of the office of colonel of volunteers, by *Mr. Harrison*, vacated his office as reporter, then he had no power to appoint the deputy in question; *Mr. Kerr* was the lawful reporter, and, as such, was entitled to the use of the records and opinions kept in the office of the clerk of the Supreme Court, and the supposed deputy of *Mr. Harrison* had no right to the possession and use of those records and opinions. It is agreed by the parties, that this question shall be decided in this proceeding.

Our constitution provides, that no person shall " hold more than one lucrative office at the same time," with some exceptions, not embracing the case at bar; and it specifies two classes of offices that shall not be regarded lucrative, viz.: Offices in the militia to which no annual salary is attached, and the office of deputy postmaster, where the compensation does not exceed ninety dollars per year.   Art. 2, sec. 9.

On general principles, the office of colonel of volunteers, as now existing, is lucrative, and so is that of reporter of the Supreme Court.   *Mr. Harrison* can not hold them both, therefore, unless the office of colonel of volunteers is an office in the militia, within the meaning of the constitution; and if he can not hold them both, his acceptance of the colonelcy, being the later office, vacated that of reporter.   8 Blackf. 329.   Is, then, the office of colonel of volunteers, now held by *Mr. Harrison*, an office in the militia?

The Constitution of the *United States* ordains that Congress may: 1. Declare war, make rules concerning captures on land and water, etc.   2. Raise and support land and naval armies, and make rules for their government.   3. Provide for calling forth the militia for specified purposes, and for governing them, etc.   Art. 1, sec. 8.   These things must be done by Congress, the legislative power.

The President of the *United States* is: 1. The commander-in-chief of the army and navy of the *United States*.   2. The commander-in-chief of the militia of the several States,

when called into the actual service of the *United States*. Art. 2, sec. 2.

It thus appears, that the Constitution of the *United States* divides the military land forces of the Union into two classes, and no more, viz.: 1. The army of the *United States*. 2. The militia.

It vests the President with no power in the premises, except, simply, with that of being commander-in-chief of the forces, after they have been brought into service.

The President has not, by the Constitution, power to raise a single soldier. Congress, the legislative power, can alone empower him to do so; and he can not, in any case, go beyond the limits, in the matter, prescribed by Congress; because he can not perform an act of legislation. The Constitution declares, that " all legislative power," granted to any one, by the Constitution, shall be vested in Congress. Art. 1, sec. 1.

Congress has power, then, by the Constitution, to do two things, among others, viz.: 1. To raise an army of the *United States*. 2. To provide for calling out the militia.

The Constitution does not prescribe the mode of raising the " army of the *United States*," nor describe or define the persons of whom it shall be composed, nor fix its size, nor require that it shall be, at all times, of the same size, nor that it shall be all raised by the same mode. But it does indicate the mode in which the militia is to be brought into service. It is to be " called forth;" brought out by compulsion; and it is, of course, a defined class of men.

Congress, in its wisdom, has proceeded to raise an army, and to provide for " calling forth " the militia; and thus has drawn the line between the two descriptions of force.

The army is raised by voluntary enlistments.

The militia is called forth.

Since the 4th of March, 1861, Congress has passed several acts, authorizing the President " to accept the services of

volunteers," for three years, or during the war; and to these, bounties, etc., are allowed, whether they enlist in what is technically called the regular service, or in the volunteer branch of the army of the *United States*. See Acts of the called session, pp. 21, 24, 31.

The Congress has, also, during the same period, passed acts for " calling forth the militia;" but in these acts, no bounties, etc., are allowed to the militia, and the time for which the President can compel them to serve, is less than a year. See Acts of the called session, p. 33; and, in connection therewith, Brightly's Digest, p. 621.

· The last authority given to the President, to call forth the militia, was by Act of Congress of the 17th of July, 1862, which is in these words, (Acts of 1862, p. 597):

"That whenever the President of the *United States* shall call forth the militia of the States, to be employed in the service of the *United States*, he may specify in his call the period for which such service will be required, not exceeding nine months; and the militia, so called, shall be mustered in, and continue to serve, for and during the term so specified, unless sooner discharged, by the command of the President. If, by reason of defects in existing laws, or in the execution of them, in the several States, or any of them, it shall be found necessary to provide for enrolling the militia, and otherwise putting this act into execution, the President is authorized, in such cases, to make all necessary rules and regulations; and the enrollment of the militia shall, in all cases, include all able-bodied male citizens between the ages of eighteen and forty-five, and shall be apportioned among the States, according to representative population."

· Acts of Congress take effect from their passage. 1 Shars. Blackstone, p. 46, note. This statute, defining what were militia in the present service of the United States, was in force when *Mr. Harrison* was commissioned colonel. He was not commissioned in that force, but in the volunteer service

for three years, or during the war, and he is a colonel in the army of the *United States.* At all events, he is not a colonel of the " militia."

It may be observed, that we should, probably, be bound to give *Mr. Kerr* the records, upon the commission of the Governor. See, as to further positions discussed in this case, *The State, ex rel. Leal* v. *Jones,* at this term. See next case.

*Per Curiam.*—The motion upon the clerk, to deliver the records to *Mr. Kerr,* is granted.

*Thomas L. Smith* and *M. C. Kerr,* for the plaintiff.

*David McDonald,* and *Fishback* and *Caven,* for the defendant.