The State ex rel. Cornwell v. Allen.

ferior courts, that pleadings were properly filed, although they do not appear in the record. 28 Ala. 216; 15 Texas 273; 11 Ills. 237; 3 Scam. 53; 2 Gilm. 357; 2 Blackf. 11; 20 Ind. 451. And that material issues in the way of the judgment were disposed of. 20 Ind. 519; 2 Gilm. 557; 6 Ind. 373.

Where the instrument sued upon is but a part execution of, or the consideration for, some other agreement, resting in parol, then parol evidence is competent to show the agreement and consideration. 15 Ind. 340; 4 Florida 373; 12 Ind. 348; 17 Ves. 200; 15 Ind. 152; 6 Minn. 532.

All objections to the form of questions, such as that they are leading, or otherwise imperfect in form, are deemed to be waived, unless specially pointed out and insisted upon as such, and are even then questions of discretion only. 6 Blackf. 68; 17 Ala. 468; 38 N. H. 332; 1 Hilton 163; id. 56.

THE STATE ex rel. CORNWELL v. ALLEN.

TITLE TO OFFICE—APPOINTMENT.—Where the title to an office is derived solely from Executive appointment, the commission of the Executive is the only legal evidence of such title.

SAME—ELECTION.—But, where the title to an office is derived from popular election, the commission of the Executive is not absolutely neceesary to establish the right to exercise the duties of such office.

VACATION OF OFFICE.—An office may be vacated by abandonment, or resigned by parol, and the existence of a vacancy in either case will depend upon all the facts and circumstances attending the same.

COUNTY AUDITOR—DUTIES OF.—A county auditor is required, both by the constitution and laws of Indiana, not only to be a resident of, but actually to reside in, the county, and keep his office in the auditor's office to be provided by the county, and personally discharge, or superintend the discharge of, the duties imposed upon him by law.

The State ex rel. Cornwell *v.* Allen.

VACATION OF OFFICE.—Any voluntary act of such officer, which permanently disables him to perform the duties of his office, such as enlistment in the military service of the *United States* in the war for the suppression of the present rebellion, will amount to a constructive resignation of his office by abandonment.

CONSTITUTIONAL LAW.—*Semble,* that the act of *May* 11, 1861, (Acts Spec. Sess. 1861, p. 40,) so far as it undertakes to empower county auditors to enter the military service of the *United States,* and discharge the duties of their civil offices by deputies alone, is unconstitutional.

APPEAL from the *Vigo* Common Pleas.

PERKINS, J.—A complaint or information, as follows, was filed in the *Vigo* Common Pleas:

"The relator informs the Court that the defendant, *Edward B. Allen,* was duly elected Auditor of *Vigo* county, *Indiana,* in *October,* 1859; and that, after said election, he duly qualified, and entered upon the duties of the office, and continued to discharge the same till the 1st of *August,* 1862, when he vacated said office by abandoning the same, in this, to-wit: on said day he volunteered as a private, in company *B,* of the 11th regiment of *Indiana* volunteers, and, on the 14th of said month, with said regiment, was duly mustered into the military service of the *United States* for three years, or during the war; that on the 16th of *August,* 1862, he was, by the members of said company, elected their captain, and from that time entered upon the duties of captain, and held himself out to the public, and the officers and privates of said regiment, as captain, and was, by the public and military authorities, recognized and accepted as such; that said company *B* was recruited in said *Vigo* county, and went into the service as one of the companies from said county; that both the Governor and Adjutant General of the State knew of the defendant acting and being recognized as captain, as afore-

said, and consented and permitted him so to act; that the defendant never received from the Governor a commission as captain; that on the 17th day of *August*, 1862, said regiment was ordered to *Kentucky*, and was in the battle of *Richmond*, on the 30th of *August*, in which all the field officers were killed, and said defendant, as senior captain, made an official report of the battle to *W. H. Fairbanks*, A. A. Adjutant General of the brigade to which said regiment was attached, and said report was accepted by him, and said *Allen* had said report, over his own signature, as commanding captain, published, on the 8th of *September*, in the *Terre Haute Express*, a paper of general circulation in said county, published at *Terre Haute;* that defendant, from the time of his enlistment, as aforesaid, totally absented himself from said office of Auditor, and appointed no deputy to discharge its duties, and remained absent in the army, as aforesaid, until the general election, held in said county on the 14th of *October*, 1862, all of which facts were well known to the voters of said county; but that, on the 28th of *October*, 1862, he returned and wrongfully intruded himself into said office, and continues to discharge the duties thereof, claiming to be the legal officer; that at that general election, in *October*, 1862, the clerk had made no certificate to the sheriff, and the latter had given no notice, as required by law, that there would be an election for county Auditor, but at said election a poll was opened in all the precincts, for the election of Auditor in said county, and the relator, *Burwell H. Cornwell*, a resident of said county, and elgible to said office, was a candidate therefor, and the only one voted for at said election for said office, and received therefor 1,700 votes; that the board of commissioners of said county refused to declare the relator elected Auditor; that he, on the 20th day of *October*, 1862, procured the clerk of the Circuit Court to make out a duly certified transcript of the certificate of the board of judges of the several precincts

of said county, containing the votes of said relator for said office, and had the said clerk mail the same to the Secretary of State, and on the 8th day of *November*, 1862, he demanded, from the Governor of the State, a commission as Auditor, as aforesaid, which he refused in writing to issue, a copy of which refusal is as follows: "I refuse to issue this commission on the ground, it is alleged, there was no vacancy in said office. *O. P. Morton*, Governor;' that on the 13th of *November*, 1862, at a special session of the board of commissioners of said county, he tendered his official bond, and it was accepted by the board; that on the 3d of *November*, 1862, he duly took the oath of office before the clerk of the *Vigo* Circuit Court, and, on the same day, demanded of the defendant the books, &c., and possession of said office of Auditor of *Vigo* county, which defendant refused to surrender; wherefore the relator sues for said office and 1,000 damages.

"RISLEY, SMITH and MACK, for Relator."


A demurrer was sustained to the complaint, and the plaintiff appealed to this Court; and afterwards, as appears by a supplemental record, final judgment was rendered in favor of the defendant. The appeal was premature. By oversight, no final judgment was rendered on sustaining the demurrer; and such judgment was not rendered till after the appeal had been taken. When the Court did render final judgment, it was asked to render it *nunc pro tunc*, but refused so to do; because no final judgment had before been rendered, and, hence, there was no case made for a *nunc pro tunc* entry of such judgment; but, says the record, the Court entered the final judgment, not for the reason that the same had been heretofore pronounced, but because it is now proper that judgment shall be rendered upon the issue between the parties under the law.

But, notwithstanding the appeal is informally here, still

the record is all before this Court, and it may, in its discretion, proceed to determine the legal questions presented by that record. This is in accordance with the general line of judicial precedent, and is sanctioned by an example furnished by so illustrious a tribunal as that of the Supreme Court of the *United States*, under the presidency of Chief Justice *Marshall*, he himself delivering the opinion in the given case. *Marbury* v. *Madison*, 1 Cranch, 137. We can not greatly err in following the precedent set by so learned and pure a Court. See also, *Prigg* v. *The Commonwealth, &c.*, 16 Pet. 539. In *Church* v. *Hubbart*, 1 Cond. Rep. 385, on p. 390, Chief Justice *Marshall* says:

"If in this case the Court had been of opinion that the Circuit Court had erred in its construction of the policies which constitute the ground of action; that is, if we had conceived that the defence set up, would have been sufficient; admitting it to have been clearly made out in point of fact, we should have deemed it right to have declared that opinion, although the case might have gone off on other points; because it is desirable to terminate every cause upon its real merits, if those merits are fairly before the Court, and to put an end to litigation where it is in the power of the Court to do so."

The public interest, also, demands an early decision of the merits in the case at bar, and private interest will not suffer from such decision. It is important that the people of *Vigo* county should know who is their legal Auditor; and delay can be of no benefit to *Allen*, for if he is not rightly in office, he will be liable to the legal officer for the fees of the office. *Glasscock* v. *Lyon*, 20 Ind. 1. We proceed to examine the case.

We shall lay out of view, in making our decision, one of the questions presented by the record, viz: whether the defendant, *Allen*, was a captain or not, of his company, because

that question does not appear to be material to the final result. We may simply remark, that, it is probably the law that where the title to an office is solely derived from Executive appointment, the commission of the Executive is the only legal evidence of such title. *Beal* v. *Morton*, 18 Ind. 346; while, on the other hand, where the title to an office is derived from popular election, the commission of the Executive is not absolutely necessary to the right to exercise the duties of such office. *Glasscock* v. *Lyon*, 20 Ind. 1. It is probable in this case, that *Allen* remained a private, but acting as a sort of *de facto* captain.

Coming now to the case before us, we may first observe that upon the face of the record, the validity of *Cornwell's* election is settled by former decisions of this Court, if a vacancy existed proper to be filled by election, at the date of his election. See *The State ex rel.* v. *Jones*, 19 Ind. 356. The only question, then, presented by the record now submitted, requiring examination and decision, is, does it show that *Allen*, the prior incumbent, had vacated the office of Auditor of *Vigo* county 20 days, or more, prior to the alleged election of *Cornwell.* If a vacancy existed, it was because *Allen* had in a legal point of view, abandoned the office. An office may be vacated by abandonment, which is a constructive resignation. An office may be resigned by parol, and of course, acts may speak that resignation.

It will aid us in determining whether an incumbent has abandoned an office, by first ascertaining what he is required to do as an occupant of the office.

The auditor of a county is bound, by the constitution and laws of the State, not simply to be a resident of the county, in the general sense of that term, but he is bound to "reside" in the county, to keep his office in the auditor's office located by the county, and to faithfully discharge the duties of the office. He certainly must discharge the duties of the

office, for he takes an oath and gives a bond to do that. He may have a deputy to assist him, but the duties of the office must be discharged under his supervision. If this is not so, the theory of the people having a right to designate who shall be their auditor is a delusion. It is a familiar principle of law that the acceptance of every office is upon an implied contract that the acceptor will perform its duties with integrity, diligence and skill. 3 Black. Comm. 164.

And it is further a familiar principle that offices like franchises, may be forfeited by mis-usuer and non-usuer.

Now, whenever the auditor voluntarily permanently disables himself to perform the duties of his office he, by that act, constructively resigns the office by abandonment of it. A temporary disability to discharge the duties of the office might not, of itself, create a vacancy. In an office, capable of being served by deputy, the deputy of the principal might, doubtless, continue to act during the temporary disability of the principal; and, if no deputy had been appointed, perhaps the sureties of the principal might appoint. See *The State* v. *Pidgeon*, 8 Blackf. 132. But a disability designed to continue for the whole term of office must vacate the office. And the question now arises, did the auditor, in this case, by enlisting as a private soldier, in the army of the *United States* for three years, or during the existing war, thus disable himself? Of this we have no doubt. What did he undertake, what did he agree to do, by that enlistment? In what situation did he place himself? He placed himself in the service of the government of the *United States*, and agreed, yes, legally bound himself, to leave, not only the county of *Vigo*, but the State of *Indiana*, and remain absent, if required, for three years, devoting his entire time to the service of the *United States* in parts remote from the State of *Indiana*. This, we judicially know, because we know that the government was not enlisting soldiers to serve in *Vigo* county, nor in the State of

*Indiana;* for there was no rebellion existing within those limits to be put down by an army. *Allen* not only undertook to leave the State, and did leave it, but he further deprived himself of the power to return, of his own volition, for a period of three years. The soldiers, as we judicially know, were enlisted for the war which was being carried on in the Southern States; and while we concede the nobleness and patriotism of the spirit which prompted the defendant to enlist, still, we can not allow such considerations to control in the decision of a question of law. Legal decisions should not rest upon the impulses of the hour, but upon principles of perpetual application. The proper way to test the decision in this case is to turn ourselves back to a period prior to this war, and to suppose an officer to be recruiting for the regular army; to suppose further, that *Allen,* then the auditor of *Vigo* county, enlists for three or five years in that army and is marched off to a frontier military post of the *United States;* would any body say, in that case, that he had not abandoned the office of county auditor? Such, in law, is this case. See *Kerr* v. *Jones,* 19 Ind. 351. It could make no difference that *Allen* should afterwards, and before the expiration of the term of his enlistment, get released therefrom, that fact being a mere accident; the vacancy having once become complete by abandonment, could not be refilled by an accidental, voluntary or forcible re-occupancy. See *Rex* v. *Harris,* 4 Barn. and Ad. 936; *Page* v. *Hardin,* 8 B. Mon. 648; Ang. and Am. on Corp. §§ 433 and 434; Abb. Dig. p. 204, §§ 49 and 50. If *Cornwell* was elected, *Allen* having vacated the office, he was elected for the term of four years. *Nelson* v. *The Governor,* 6 Ind. 496.

If public policy should have anything to do in establishing the principle of decision touching the discharge of their duties by public officers, that policy would require that they

should be held to a strict, not a lax, negligent habit of attention.

The act of 1861, (acts of 1861, p. 40,) allowing officers, who enlist in the army, to severally retain their offices, if they desire to, and to occupy them by deputy, is referred to. We doubt the consistency of that act with the Constitution, as applicable to county Auditors, but we need not decide the point here, as *Allen* did not attempt to avail himself of the statute, by acting under it. It does not appear that he appointed any deputy.

*Per Curiam.*—The judgment below is reversed, with costs. Cause remanded, with instruction to the Court below to overrule the demurrer to the complaint.

There was filed herein a motion for a rehearing, by the appellee, which was overruled by the Court, and thereupon the following additional opinion was rendered by—

PERKINS, J.—The appellee has filed a petition for a rehearing, in this case, on the ground that the appeal was prematurely taken, and the case, therefore, not properly before the Court. It was conceded, in the opinion given, that the appeal was prematurely taken; but, on the filing of the petition for rehearing, we again inspected the record with care, and are satisfied that we erred in our statement, on this point, in the original opinion.

The record shows these facts: At the *December* term, 1862, of the *Vigo* Common Pleas, *Allen* demurred to the complaint of the plaintiff, the demurrer was sustained, the plaintiff appealed to the Supreme Court, and filed an appeal-bond, which recited, that "judgment was rendered by the said Court against the said plaintiff, and in favor of the said defendant, this 30th day of *December*, 1862, from which judgment the said plaintiff has appealed," &c.

The State ex rel. Cornwell *v.* Allen.

But the clerk did not enter a final judgment on the ruling upon demurrer.

The record further shows, that, afterwards, the plaintiff moved, on notice to the defendant, for a *nunc pro tunc* entry of such final judgment, and that, at the *August* term, 1863, "the Court being advised, it is ordered that the record be amended, and that final judgment be rendered, in this case, as asked for in said motion, on the ruling of the Court, at its *December* term, 1862, upon the demurrer to the last amended complaint, *nunc pro tunc*, as follows, to-wit: It is considered by the Court, that the plaintiff take nothing by his suit, and that the defendant go hence," &c.

Thus the final judgment of the Court is rendered as of the *December* term, 1862.

What misled us in the original opinion, was the explanation which the Court below appended to the judgment, and which we copied, as to the consideration, by which it was influenced in rendering the judgment; but we are satisfied that that explanation does not avoid the judgment, so as to render an appeal inoperative.

The petition for rehearing is overruled.

*Smith & Mack, Voorhees & Risley,* and *McDonald & Roache,* for the appellant.

*R. W. Thompson, B. B. Moffatt, H. D. Scott,* and *Newcomb & Tarkington,* for the appellee.