YONKEY and Another *v.* THE STATE, on the relation of CORNELISON.

COUNTY OFFICERS.—RESIDENCE.—Every county officer is required by the constitution to reside in the county in which he holds office, and if, during his term, such officer ceases to reside in the county, he thereby abandons and forfeits his office.

QUO WARRANTO.—OFFICE.—The statute authorizes an information, in the nature of a *quo warranto*, to determine the right of office, and such information may be filed by any person who claims an interest in the office, on his own relation.

SAME.—PLEADING.—When, in such case, the information is filed to try the right to a county office, by one who claims the office under an appointment from the county board, a copy of the order of the board making the appointment need not be filed with the information.

SAME.—Nor, in such case, where the appointment is alleged to have been made at a time when the county board could not have been in regular

NOVEMBER TERM, 1866.                    237

Yonkey and Another *v.* The State on the relation of Cornelison.

session, is it necessary to allege the giving of the requisite notice to convene the board in special session. The allegation that the appointment was made by the board is sufficient.

COUNTY OFFICER.—ABANDONMENT OF OFFICE.—When a county officer has once abandoned his office by ceasing to reside in the county, he cannot afterwards resume the office.

SAME.—A, who was recorder of *Clinton* county, during his term of office went to *Washington, D. C.,* and procured an appointment as assistant doorkeeper of the House of Representatives. He left a deputy in charge of his office of recorder, and his family continued to reside in *Clinton* county. During the adjournment of Congress he returned to his family and took some personal oversight of his office, and during all the time he claimed to be a resident of *Clinton* county, paid a poll tax therein, and voted there at the elections.

*Held,* that he did not lose his residence in *Clinton* county, by his temporary absence therefrom for the purpose stated.

DOMICIL.—As a general rule, where a man is the head of a family and is a house keeper, the domicil of the family is presumed to be his legal place of residence.

SAME.—INTENTION TO CHANGE.—It requires an intention in order to change the domicil, and therefore if a person leave his place of residence temporarily, on business, or otherwise, but with the intention of returning, he does not thereby lose his domicil.

OFFICE.—DEPUTY.—The appointment of a deputy and the leaving of the office in his charge, in the absence of any proof of neglect, is not such non-user or misuser as to forfeit an office.

APPEAL from the *Clinton* Common Pleas.

ELLIOTT, J.—This was an information under the statute, in the form of a *quo warranto,* in the name of the State, on the relation of *Cornelison,* against *Yonkey* and *Sims,* to determine the right to the office of recorder of *Clinton* county.

The information is in three paragraphs. The first of these alleges, in substance, that the defendant, *Yonkey,* was duly elected recorder of said county in *October,* 1860, and after said election was duly qualified and entered upon the duties of said office, which he continued to discharge until about the 1st day of *December,* 1863, at which time he vacated said office by abandoning the same, in this, to-wit: that "on or about said day, he ceased to reside in said county, and also ceased to attend to the duties of said office, and went to the city of *Washington, D. C.;* that he resided

and remained in said city until about the 10th day of *July*, 1864;" that prior to said first day of *December*, 1863, said *Yonkey* appointed one *Merritt* his deputy in said office; that *Merritt* continued to discharge the duties of the office, but without the supervising care of *Yonkey*, until about the 16th of *June*, 1864, when he also ceased to supervise or attend to the duties thereof, and left the office in the care of the defendant, *Sims;* that said *Sims* assumed to discharge the duties thereof, for the period of four weeks, without any pretense of qualification or authority; that on or about the 15th of *July*, 1864, said *Yonkey* returned to said county and then usurped and intruded himself into said office, and pretended and assumed to appoint the said *Sims* as his deputy therein; that the said *Sims* thereupon entered upon the discharge of the duties of the office; that on the 5th of *December*, 1864, *Yonkey* again left the county of *Clinton* and returned to the city of *Washington*, where he had ever since remained; that on the 30th of *January*, 1865, the board of commissioners of said county appointed *Cornelison*, the relator, to fill the vacancy in said office, occasioned by the abandonment thereof by *Yonkey*, for his unexpired term; that said *Cornelison* qualified as such recorder according to law, on said 30th of *January*, 1865, and on the day following demanded of said *Sims*, who was then in the possession of the same, the said office and the books and papers belonging thereto, but he failed and refused to deliver or surrender, to the relator's damage in the sum of one thousand dollars. Prayer that the defendant be ousted from said office; that the relator be declared entitled thereto, and for judgment for his damages.

The second paragraph is substantially the same as the first, except that *Cornelison* claims the office by virtue of his election thereto, at the annual election held in said county in *October*, 1864.

In the third paragraph, *Cornelison* claims the office by virtue of his appointment from the board of commissioners. This paragraph is very similar to the first, except that it

contains the averment that the board of commissioners was convened by the auditor of said county, pursuant to the statute, for the purpose of inquiring and considering whether there was a vacancy in the office of recorder, and of taking such action in reference thereto as the interest of the county might require;" that they found and declared the office vacant, because of the abandonment thereof by said *Yonkey*, and thereupon appointed said relator to fill said vacancy. A copy of the appointment is set out in the paragraph. It contains the further averment, that when *Yonkey* abandoned the office in *December*, 1863, and ceased to reside in said county of *Clinton*, he went to the city of *Washington*, in the *District of Columbia*, and there obtained and entered upon the duties of a clerkship in one of the departments of the *United States* Government, which he ever afterwards continued to hold.

It is alleged in all the paragraphs that *Yonkey* was elected recorder in *October*, 1860, but it is not shown in either the first or second paragraph when his term of office under said election commenced, or when it would terminate, though it may be inferred from the language used, that his term had not expired at the time of the alleged appointment of *Cornelison* by the board of commissioners, in *January*, 1865. In the third paragraph, however, it is stated that *Yonkey* was elected for the term of four years, commencing on the 16th day of *August*, 1861; his term would consequently expire on the 16th day of *August*, 1865. A demurrer to each paragraph of the information was overruled, to which the defendants excepted. Issues were formed by a denial of the facts alleged in the several paragraphs of the information, except the averments that *Yonkey* was duly elected to the office of recorder in 1860, and subsequently qualified and entered upon the duties thereof, the appointment of *Sims* as his deputy, and the refusal of the latter to surrender the same to the relator, which were admitted. The issues were tried by the court, a jury being waived by agreement of the parties. The court found that *Yonkey* did abandon the office, as charged

in the information, and did cease and wholly fail to discharge the duties thereof, whereby he abandoned and forfeited the same, as charged in the information; that the defendant, *Sims,* by means of "an assumed and pretended deputyship under said *Yonkey,*" did usurp and intrude himself into said office, and occupied and held the same unlawfully and without right, to the exclusion and prejudice of *Cornelison,* the relator; that on the 31st day of *January,* 1865, said *Cornelison* was legally and rightfully the recorder of said county, he having before that time given bond, taken the oath of office, and fully qualified according to law; that on said 31st day of *January,* 1865, he demanded of said *Sims* the possession of said office, and the books and papers belonging thereto, all of which said *Sims* refused to surrender. The court thereupon found for the relator, and assessed his damages at twenty-five dollars. Motion for a new trial overruled, and judgment. The defendants appeal.

The errors assigned, are: 1. The court erred in overruling the demurrers to the several paragraphs of the information. 2. The court erred in overruling the defendants' motion for a new trial.

We will consider them in their order. 1. Were the demurrers to the several paragraphs of the information correctly overruled? This question presents no difficulty, so far as it relates to the first and third paragraphs. Each of these paragraphs alleges that *Yonkey,* in *December,* 1863, ceased to reside in said county of *Clinton,* and thereby abandoned and vacated said office; that the office being vacant, the board of commissioners of said county, on the 30th of *January,* 1865, appointed the relator, *Cornelison,* to fill said vacancy; that he thereupon gave bond and was duly qualified according to law, and, on the day following, demanded of *Sims,* who then held the office without authority or right, the possession of the office and of the books and papers belonging to the same. Section six of the sixth article of the constitution of *Indiana* provides that "all county, township and town officers shall reside within their

respective counties, townships and towns, and shall keep their respective offices at such places therein, and perform such duties, as may be directed by law." If, then, *Yonkey*, in *December*, 1863, ceased to reside in *Clinton* county, as alleged, he thereby abandoned and forfeited the office, and it became vacant; and any subsequent claim, or attempt of any one, as *Yonkey's* deputy, to hold the office or discharge the duties thereof, would be without right, and a usurpation. See *Hedley* v. *The Commissioners of Franklin County*, 4 Blackf. 116; *The State* v. *Jones*, 19 Ind. 356; *The State* v. *Allen*, 21 Ind. 516. We are here discussing the effect produced upon the right of *Yonkey* to hold the office by his ceasing to be a resident of the county, and not what constitutes a residence or a change of residence. The statute authorizes such an information to be filed by any person, on his own relation, whenever he claims an interest in the office which is the subject of the information. 2 G. & H., § 750, p. 323. Here, *Cornelison* claims a right to the office by the appointment of. the board of commissioners of the county, who were authorized by the statute to fill the vacancy in the office by such an appointment, until a successor should be duly elected and qualified. 1 G. & H., § 4, p. 671. This, we think, was a sufficient claim to authorize him to become the relator. Nor was it necessary that he should file with the information a copy of the proceedings of the board of commissioners, showing the appointment. The information is not a pleading founded on a written instrument, within the meaning of section 78 of the code. The appointment of *Cornelison* is alleged to have been made on the 30th of *January*, 1865, a time at which, under the statute, the commissioners could not have been convened in regular session; and as they can only be convened in special session for a particular purpose on written notices, issued by the county auditor, it is contended by the appellants' counsel that the information should show that the requirements of the statute, authorizing them to be convened in special session, had been strictly complied

with, for the purpose of showing their jurisdiction over the subject, and that in the absence of such showing, the appointment must be presumed to have been made without authority, and is therefore void. This is not a question of the jurisdiction of the board of commissioners over the subject matter, the filling of vacancies in county offices by temporary appointments. That power is conferred by express statute. But the question here is, was the appointment made by a legally constituted board of commissioners? If not, then it was not made by "the board of commissioners" at all, but by private individuals. It is alleged to have been made by the board of commissioners, or, in other words, the corporate body, which is sufficient for the purpose of the information. It is presented here as a question of pleading and not of evidence. The pleading consists of allegations, in plain and concise language, of facts, not of the evidence by which the facts are to be proved. In the cases cited by the appellants' counsel the question arose upon the evidence and not on the pleadings, and they are not therefore in point here.

A different question is presented upon the second paragraph, in which *Cornelison* claims the right to the office by virtue of his election thereto, at the *October* election in 1864. It is averred in this paragraph that he was "duly qualified as such recorder" on the 30th of *January*, 1865, and made a demand of the office, &c., of *Sims* on the day following. If, as it is alleged in the paragraph, *Yonkey* vacated and abandoned the office in *December*, 1863, by removing to *Washington* city and ceasing to reside in *Clinton* county, he could not afterwards legally resume the office, and therefore the election of *Cornelison*, in *October*, 1864, entitled him to its possession as soon thereafter as he should be commissioned and qualified, by executing a proper bond and taking the oath of office, as required by the statute. Section 9 of the act "touching official bonds and oaths" declares that "if any officer of whom an official bond is required, shall fail, within ten days after the commencement of his term

of office and receipt of his commission or certificate, to give bond in manner prescribed by law, the office shall be vacant." It is not stated in the paragraph, in direct terms, that *Cornelison* gave bond, but it is averred that he "duly qualified as such recorder," and construing this averment to mean that he gave bond and took the oath of office, then the date of giving the bond is alleged to be the 30th of *January,* 1865, a period of more than three months subsequent to the date of his election. And it is insisted by the appellant's counsel that *Cornelison* forfeited the right to the office under said election by failing to give bond within the time required by the statute, and that the giving bond at a subsequent time did not confer on him any right to the office. But the question does not arise upon the demurrer to the paragraph. The statute requires the officer to give bond within ten days after the commencement of his term "and receipt of his commission." Recorders, under the laws of this State, are commissioned by the governor, and it does not appear from the paragraph that *Cornelison* received his commission prior to the 30th of *January,* 1865, when, it is alleged, "he duly qualified as such recorder." If the statute is to be construed literally, still, as it does not appear that *Cornelison* failed to give bond within ten days after the receipt of his commission, we cannot say that the office had become vacant by such a failure. We think, therefore, the court did right in overruling the demurrer.

The remaining question presented arises upon the refusal of the court below to grant a new trial. One of the reasons stated for a new trial is, that the finding of the court was contrary to the evidence. The evidence is all in the record, and shows the following state of facts: *Yonkey* had a family and with them resided in *Frankfort,* in *Clinton* county. In *December,* 1863, he appointed one *Merritt* his deputy in the office of recorder of said county, and put him in charge of the office. Soon after this time, *Yonkey* went to the city of *Washington,* where he was employed as assistant door-

keeper to one of the houses of Congress, and remained there until about the 10th of *July*, 1864, when he again returned to *Frankfort*, in *Clinton* county, and in person resumed the duties of the office of recorder. *Merritt* remained in the office and continued to discharge its duties as *Yonkey's* deputy until a short time before the return of the latter from *Washington*, when he left it, and *Sims* took charge of it, at the request of one of *Yonkey's* sureties and continued in charge until *Yonkey* returned, although he was not sworn as such deputy. *Yonkey* rented a house in *Frankfort*, and moved his family into it before he left for *Washington*, and his family continued to reside in said house during all the time of his absence. In *July*, 1864, and a short time after *Yonkey's* return, he entered into an arrangement with the defendant *Sims*, by which the latter advanced to him a sum of money equal to thirty dollars per month for the remainder of his term in said office, in consideration of which he appointed *Sims* as his deputy, who was to discharge the duties and receive the emoluments of the office for the remainder of *Yonkey's* term. *Sims* was duly qualified as deputy and took charge of the office, and continued in charge thereof until the trial of this cause in the court below. *Yonkey* continued to reside with his family in *Frankfort* until sometime in *December*, 1864, when he again went to *Washington*, and remained there until after the commencement of this suit. His family all the while continued to reside in *Frankfort*. From *July* until in *December*, 1864, *Yonkey* was frequently about the recorder's office, but the duties of the office were discharged by *Sims*. *Yonkey* all the time claimed to be a citizen and resident of *Clinton* county, was charged with and paid a poll tax for 1864, and voted there at the state and presidential elections of that year. The term for which he was elected to the office of recorder did not expire until the 14th of *August*, 1865. In *October*, 1864, *Cornelison*, the relator, was elected recorder as *Yonkey's* successor, and was commissioned by the governor on the 27th of the same month, for the term of four

years from the 14th day of *August*, 1865. On the 28th of *January*, 1865, the auditor of *Clinton* county issued a notice to convene the board of commissioners of said county, on the 30th of the same month, at the court house in *Frankfort*, "for the purpose of appointing a county recorder of said county, to fill the vacancy created by the misuser and non-user of *John Q. A. Yonkey*." The commissioners were duly notified, and convened on the day named, and declared that *Yonkey* had ceased to reside in *Clinton* county, and to use said office, and had ceased to supervise the records thereof. They therefore declared the office vacant, and appointed said *Cornelison* to fill said vacancy until the 16th day of *August*, 1865, and until his successor should be duly qualified. *Cornelison* thereupon gave a proper bond and was duly sworn, and on the succeeding day demanded the office and all the books and papers thereof of *Sims*, who refused to deliver them. We sustained the ruling of the lower court in overruling the demurrers to the several paragraphs of the information, on the ground that it was averred in each paragraph that *Yonkey* had ceased to reside in *Clinton* county, without discussing the effect of any of the other facts alleged as a cause of forfeiture. But, from the evidence in the case, we think it too clear to admit of controversy, that *Yonkey*, in going to *Washington*, under the circumstances and for the purposes shown in evidence, did not lose his residence in *Clinton* county, or "cease to reside" therein as alleged. As a general rule, where a man is the head of a family and is a house keeper, the domicil of the family is presumed to be his legal place of residence. It requires an intention in order to change the domicil, and therefore if a person leaves his place of residence temporarily, on business or otherwise, but with the intention of returning, he does not thereby lose his domicil, as he could not by such absence acquire one elsewhere. See Bouvier's Law Dic., title "Domicil," and authorities cited. Here, *Yonkey* resided with his family in *Clinton* county, and his family continued to reside there. It was his residence, and in go-

ing to *Washington* it is evident he did not intend to lose his residence in *Clinton* county or change it to *Washington.* He therefore continued to reside in *Clinton* county. Nor do we think the evidence justifies the conclusion that *Yonkey* vacated the office by non-user, or forfeited it by misuser. The statute authorized him to appoint a deputy, made it the duty of the deputy to take the oath required of his principal, authorized him to perform all the official duties of his principal, and subjected him to the same regulations and penalties, and made the principal responsible for all the official acts of his deputy. 1 G. & H., p. 302.

It is not claimed that the duties of the office were neglected, or improperly performed, except that for a short period in *July*, 1864, after *Merritt*, the deputy, left the office, the duties were discharged by *Sims*, without his having taken the requisite oath, until the return of *Yonkey*, and even during that time it is not claimed that the public interest, or that of any private individual, suffered any detriment from the manner in which the office was kept. The case of *The State ex rel. Cornwell* v. *Allen*, 21 Ind. 516, is cited by the appellee's counsel as sustaining the decision of the court below. In that case, it was held that *Allen* had abandoned the office of auditor of *Vigo* county by volunteering in the military service of the *United States* for the period of three years. The decision of the case was based upon the fact that *Allen*, by voluntarily entering the military service of the *United States*, a position that he could not abandon or leave at pleasure, had thereby permanently disabled himself to perform the duties of the office, or supervise the same. But it was said in the decision of that case, that " a temporary disability to discharge the duties of the office might not, of itself, create a vacancy. In an office capable of being served by a deputy, the deputy of the principal might, doubtless, continue to act during the temporary disability of the principal, and if no deputy had been appointed, perhaps the sureties of the principal might appoint." In the case at bar, *Yonkey* did not disable him-

self from returning at will to the discharge of the duties of the office in person.   Without commending the conduct of *Yonkey,* or claiming that it was consistent with that good faith and sense of responsibility which should characterize the conduct of a public officer, we are constrained to say that, in our judgment, as a question of law, the evidence does not justify the finding and judgment of the court below.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*J. Claybaugh, L. McClurg* and *J. N. Sims,* for appellants.
*Morrison* and *Palmer,* for appellee.