## Krant *v.* The State.

Intoxicating Liquors.—*Forfeiture of Permit.*—*Removal from State.*—A person who obtained a permit to sell intoxicating liquors, under the act to regulate the sale of intoxicating liquors (Acts 1873, p. 151), and who afterward

voluntarily removed from the State, by the act of removal forfeited and abandoned his rights under the permit, and could not thereafter continue the business by means of an agent. No judgment of forfeiture is necessary in such case.

SAME.—Such permit is forfeited by a voluntary removal from the State, though it is not a cause of forfeiture provided for in the act for a violation of its provisions, but because the holder has ceased to possess the required qualifications.

SAME.—*No Protection to Agent.*—Such permit, being abandoned and forfeited by the principal, to whom it was granted, is no protection to one who claims to act as his agent in selling intoxicating liquors.

From the Jefferson Circuit Court.

*J. R. Cravens,* for appellant.

*J. C. Denny,* Attorney General, for the State.

BUSKIRK, C. J.—This was a prosecution charging appellant with a violation of the first section of the act approved February 27th, 1873, in selling liquor without a permit.

The prosecution originated before a justice of the peace, where there was a finding and judgment against appellant, who appealed the case to the circuit court. In the circuit court, the cause was submitted to the court for trial, and again resulted in a finding and judgment against the appellant, who has appealed to this court and assigned for error the overruling of his motion for a new trial.

It appears, from a bill of exceptions, that the cause was submitted to the court for trial upon an agreed statement of facts. The substance of the facts agreed upon was:

1. That the appellant sold intoxicating liquor at the time and place, and to the person named in the affidavit, and permitted such liquor to be drunk upon the premises; that the appellant was the agent and bar-tender of one Joseph Dillenheisen, who was the owner and proprietor of the saloon where such liquor was sold.

2. That the said Joseph Dillenheisen had, prior to such sale, procured in due form of law, from the proper authority in Jefferson county, a permit to sell intoxicating liquors at the place named in the affidavit, and that the said Dillenheisen had, in writing, appointed the appellant his agent and

bar-tender, and had authorized him to manage and conduct the business of such saloon.

Both the permit and the written agreement between Dillenheisen and appellant were copied into the agreement, and were read in evidence.

3. That at and prior to the time when such permit was issued to the said Dillenheisen, he was a resident voter of Jefferson county, and a citizen of the State of Indiana.

4. That subsequent to the issuing of such permit, but prior to the sale of the liquor in question by appellant, the said Dillenheisen had ceased to be a resident voter of Jefferson county, and a citizen of the State of Indiana, but had removed to and was residing in the city of Louisville, and State of Kentucky.

Counsel have discussed the following questions.

1. Does the simple act on the part of Dillenheisen, who obtained the permit, of removing to another state during the lifetime of the permit, vacate or forfeit his right under said permit to continue his business to the end of the year by means of his agents?

2. Does the removal of Dillenheisen from the State, of itself, work a forfeiture of the permit, unaided by the determination of a judicial tribunal, and so destroy the franchise under the permit as to make the principal and agent liable to a criminal prosecution, or either of them, before the forfeiture is judicially declared?

3. Can a permit be forfeited under the act upon which this prosecution is founded, for any cause other than those specified in such act, which are declared to work a forfeiture of a permit?

4. If the permit is forfeited by the removal of the principal from the State, without a judicial decree of forfeiture, then is the principal or agent liable for selling without a permit?

We will dispose of these questions in the order in which they are stated.

It is provided by the second section of the act of Febru-

ary 27th, 1873, that "any person desiring a permit to sell intoxicating liquors to be drunk on the premises, shall file in the office of the auditor of the proper county, not less than twenty days before the first day of the term of any regular session of the board of commissioners of such county, a petition in writing, stating therein the building or number, street, ward or township wherein the permission is asked to be granted, praying for such permit, and certifying that the applicant is a resident voter of such county, and a citizen of the State of Indiana, and that he is a proper person to have and receive such permit," etc.

By the above quoted section, three qualifications are imposed as conditions precedent to the granting of a permit:

1. The applicant must be a resident voter of the county in which he proposes to carry on business.

2. He must be a citizen of the State of Indiana.

3. He must be a proper person to have and receive a permit.

A permit cannot be granted to him unless he possesses all of the above qualifications. This is plain and obvious, and is not controverted by the learned counsel for appellant; but it is earnestly contended that, as the legislature has not in express terms provided that the person who has received a permit shall continue during the time such permit runs to possess such qualifications, the courts cannot infer from the language used that such was the legislative intention. The courts cannot create and impose such a condition. The courts cannot make laws. Their province is to interpret, construe, and apply the laws which may emanate from the legislative department, and in so doing the main purpose should be to ascertain and carry into effect the intention of the legislature. In ascertaining the legislative intent, we look not only to the words employed, but to the evident spirit and purpose of the enactment. Then, let us enquire why the legislature imposed these conditions.

The purpose of the act under examination is to regulate the traffic in intoxicating liquors, and to lessen the evils

Krant *v.* The State.

resulting from the unrestrained sale and use thereof. It appears to us that the legislature intended to accomplish two objects. The first was to lessen the number of houses where intoxicating liquors could be sold and drunk upon the premises where sold. The second was to elevate the standard of qualifications, and increase the responsibilities of those who should engage in the business of retailing intoxicating liquors. The first purpose is attempted to be accomplished by requiring the appellant to procure the signatures of a majority of the voters of the township, town, or ward in which he proposes to carry on such business. The second is sought to be secured by requiring the applicant to be a resident voter of the county, a citizen of the State, a proper person to be entrusted with a permit, and to give bond to answer in damages for injuries resulting from such traffic. It is fair to presume that the legislature, by requiring the applicant to be a voter of the county, a citizen of the State, and a proper person to engage in such business, looked to the personal fitness and responsibility of the persons to be entrusted with permits, and legislated upon the theory that persons possessing such qualifications would be more likely to strictly obey the law, and preserve good order in their places of business, than those who did not.

Observation and experience demonstrate that there is a wide and marked difference in the capacity of men to restrain and control others. A proper person to be entrusted with a permit would not knowingly sell to minors, or men intoxicated, or to those in the habit of being intoxicated, or permit gambling, fighting, or other disorderly conduct in or about his place of business. It is quite obvious to us, that the legislature, in requiring these qualifications, placed much reliance in the personal fitness and capacity of the persons who were to be entrusted with permits to sell intoxicating liquors, to be drunk where sold, and contemplated that they would give their personal attention to such business. If we are correct in this view, is it not too plain for argument, that the legislature intended that the person

who received a permit should continue to possess these qualifications during the existence of the permit? It would not be respectful to the legislature to indulge the presumption that they intended that the applicant should possess such qualifications, and that they should constitute conditions precedent to his obtaining a permit, and that immediately after he had been entrusted with a permit he might cease to be a voter and citizen of the State, and become a citizen of another state, or foreign government. The presumption would be, that as long as he remained a resident voter of the county and citizen of the State, he would give his personal attention to his business. If he remains a citizen of the State and violates the law, he would be amenable to our laws; but if he becomes a citizen of another state, or foreign government, he would place himself beyond the process and jurisdiction of our courts. No such consequences would result from a temporary absence from the State on business or pleasure.

In our opinion, the legislature intended to provide that the person who received a permit should, during the existence of such permit, remain a resident voter of the county, and a citizen of the State of Indiana.

This brings us to inquire, whether the removal from the State of Mr. Dillenheisen, of itself, worked a forfeiture of his permit, unaided by a judicial determination declaring a forfeiture.

In *Hedley* v. *The Board, etc.*, 4 Blackf. 116, the board made an order declaring that a vacancy existed in the office of recorder of Franklin county, in consequence of the removal of John Hedley, the late incumbent of said office, and proceeded to appoint a successor. From this order an appeal was taken to the circuit court, where a motion was made to quash and set aside such order, but the motion was overruled, and an appeal taken to this court. This court held, that the board of commissioners possessed no power to create a vacancy, but had the power to declare that a vacancy already existed, and to appoint a successor to fill such vacancy; and

the action of the board was affirmed. There had been no judgment of forfeiture in consequence of the removal of Mr. Hedley. By affirming the action of the court below, this court held that a judgment of forfeiture was not necessary.

In *Kerr* v. *Jones*, 19 Ind. 351, this court held, that Benjamin Harrison, by accepting the office of colonel of volunteers, vacated the office of reporter of this court, and that no judicial declaration of forfeiture was necessary.

In *The State, ex rel. Leal*, v. *Jones*, 19 Ind. 356, this court held, that Crosby, auditor of Dearborn county, by his voluntary removal from the State, had vacated his office, and that no judicial determination of forfeiture was necessary.

In *The State, ex rel. Cornwell*, v. *Allen*, 21 Ind. 516, this court held, that Allen, by volunteering as a private in the eleventh regiment of Indiana volunteers, and by leaving the State with such regiment, and going to the seat of the late war, vacated the office of auditor of Vigo county, and that a successor was properly elected, without any judicial declaration that a vacancy existed.

In *Leach* v. *Cassidy*, 23 Ind. 449, the ruling in the case of *The State, ex rel. Leal*, v. *Jones, supra*, is referred to with approval.

In *Yonkey* v. *The State, ex rel. Cornelison*, 27 Ind. 236, this court held, that if Yonkey ceased to reside in Clinton county, he thereby abandoned and forfeited the office of recorder of such county, and it became vacant; and any subsequent claim, or attempt of any one, as Yonkey's deputy, to hold the office or discharge the duties thereof, would be without right and a usurpation. And all the previous cases cited were referred to with approval.

All of the above cited cases, except the one in 4 Blackf., were decided since the adoption of the code, which provides for informations, which are a substitute for the old writ of *quo warranto*.

The second subdivision of section 749 of the code, 2 G. & H. 322, provides, that an information may issue " when-

ever any public officer shall have done or suffered any act which, by the provisions of law, shall work a forfeiture of his office."

It is quite clear to us, that if a judicial determination was not necessary to forfeit an office, under the above clause, none is required in the present case, where there is no such statute.

We think that when Mr. Dillenheisen ceased to be a voter of Jefferson county, and a citizen of the State of Indiana, he abandoned and forfeited all rights under his permit, and that a judicial determination declaring such forfeiture was not necessary.

It is, in the third place, contended by counsel for appellant, that a permit cannot be forfeited for any cause other than one specified in the said act. It is provided in the fifth section of said act, among other things, that " should any person holding a permit be convicted of a violation of any of the provisions of this act, such conviction shall work a forfeiture of the permit, and all rights thereunder ; and no permit shall thereafter be granted to such person before the expiration of five years from the date of such conviction."

The forfeiture provided for by the above quoted section results from a conviction for a criminal violation of the provisions of law, and not because the person holding the permit had ceased to possess the qualifications required to be possessed by the applicant.

In our opinion, Dillenheisen, by voluntarily leaving the State, forfeited the rights and privileges granted to him by the permit. By such removal, he voluntarily abandoned and surrendered the rights and privileges secured by his permit. In the case of *The State, ex rel. Leal,* v. *Jones, supra,* this language was used : " A vacancy may so occur in an office as to require it to be filled at a succeeding annual election, by the acceptance, by the incumbent, of another incompatible office. By the expiration of the current term of the incumbent ; by the death of the incumbent ; by the removal of the incumbent, from the office, by legal proceedings ; by the voluntary

removal of the incumbent, living, from the township, county, or State, as the case may be; and this without a judicial declaration of the vacancy."

It was held by this court, in *The State, ex rel. Cornwell,* v. *Allen, supra,* that when the auditor voluntarily and permanently disabled himself, by his removal from the State, to perform the duties of his office, he by that act constructively resigned the office by an abandonment of it.

In our opinion, Dillenheisen voluntarily abandoned the privileges and franchises secured by his permit, by his voluntary removal from the State.

This leaves for our examination the fourth proposition laid down by counsel for appellant.

The appellant placed his defence solely upon the continued existence of the permit granted to Dillenheisen. He acted as the agent of Dillenheisen, and when the authority of the principal terminated, that of his agent also ceased. The abandonment of the privileges and franchises secured by the permit, by the principal, as effectually terminated the authority of the agent, as the death of the principal would have done. *Hawley* v. *Smith,* 45 Ind. 183.

It is very plain that Dillenheisen could not be held liable for an illegal sale made in his absence, and without his knowledge or consent.

The appellant admits the sale charged, and attempts to justify it under the permit granted to Dillenheisen; and the permit having been abandoned by the act of the principal, it cannot afford protection to acts performed by the agent subsequent to such abandonment. The appellant stands as though no permit had been granted, and as he confessedly sold the liquor as charged, and has failed to justify such sale, it necessarily results that his conviction was right.

The judgment is affirmed, with costs.