## Commonwealth ex rel. v. Smith

*Anthony Cavalcante*, for relator.

*W. Frank Lane*, for defendant.

MORROW, J., August 6, 1941.—Relator, William J. Crow, in a suggestion filed July 29, 1941, for a writ of quo warranto, set forth, inter alia, that he became Mayor of the City of Uniontown on the first Monday of January 1940, and on June 4, 1941, while still mayor, he was called into the active military service of the United States of America, and that on or about July 8,

1941, George B. Smith assumed to act as such mayor. He suggested that said Smith be summoned to appear and show by what authority he is acting as mayor. The writ was awarded. On August 4, 1941, Smith moved that the writ of quo warranto be quashed, primarily for this reason:

"Upon his induction into the active military service of the United States of America on June 4, 1941, said service being in the office of major in the Army of the United States, an office or appointment of trust or profit under the United States, William J. Crow, the relator, by the operation of article XII, sec. 2, of the Constitution of the Commonwealth of Pennsylvania, was disqualified to hold or exercise the office of Mayor of the City of Uniontown, Pa., and has not, therefore, such personal interest in the controversy as to entitle him to invoke the issuance of the writ of quo warranto."

At the argument upon this motion it was admitted by relator that he had a commission as major in the United States Army for one year, and that the compensation received by him from the United States was approximately $430 per month. His salary as mayor was $200 a month.

That part of article XII, sec. 2, of the Constitution of Pennsylvania relevant to the question here involved reads:

"No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached."

The Constitutions of many States contain provisions substantially the same. The reason therefor does not need elaboration here. It has been suggested that one purpose was to prevent any encroachments of the general upon the State government.

The constitutional prohibition is against one man holding or exercising any office or appointment of trust or profit under the United States and at the same time

any office in this State to which a salary, fees, or perquisites shall be attached. "The prohibition may be enforced without legislative aid, and no action or inaction of the legislature can destroy it": DeTurk v. Commonwealth, 129 Pa. 151, 160. This enunciation of our Supreme Court is a complete answer to the suggestion that by reason of the Act of July 2, 1941, P. L. 231, relator in acting as a major in the United States Army can do so unaffected by the constitutional provision mentioned as concerns his title to the office of Mayor of the City of Uniontown. No act of the legislature can amend or destroy this provision of our Constitution. Furthermore, this Act of July 2, 1941, does not even purport to do so. It is simply an act to amend section 1 of another act of the legislature approved May 15, 1874, P. L. 186. This Act of 1874 provided, inter alia, that every person holding any office or appointment of profit or trust under the Government of the United States should be incapable of holding or exercising certain offices, including the office of mayor, and prescribing a penalty for its violation. The Act of July 2, 1941, in effect merely amended section 1 of the Act of 1874, by adding that the provisions thereof should not apply to persons in the active military or naval service of the United States. The Act of 1874 not being essential for the enforcement of the constitutional provision, the entire repeal of this act by the legislature, instead of its amendment on July 2, 1941, would have made no difference so far as concerns the question here involved. The law in other States seems to be in harmony with that in Pennsylvania.

In the case of Lowe v. State, 83 Tex. Crim. Rep. 134, 201 S. W. 986, a judge was taken by the United States as an officer in the military service. The Constitution of Texas provided, in substance, that no person holding or exercising any office of profit or trust under the United States should be eligible to hold or exercise any office of profit or trust under that State. It was held that, when the judge accepted an office of profit in the

military service of the United States his tenure as judge ceased by virtue of the constitutional provision mentioned.

The Constitution of Nevada provides (article IV, sec. 9) : "No person holding any lucrative office under the government of the United States, or any other power, shall be eligible to any civil office of profit under this state."

A State senator was appointed paymaster in the Army of the United States, with the rank of major. It was held that, by reason of the acceptance of said appointment, he became incapable of legally holding the office of State senator; that the acceptance of the Federal office was a resignation of the State office and created a vacancy in the latter office. See State v. Sadler, 25 Nev. 131, 83 Am. St. Rep. 573, 584.

In the case of State v. Allen, 21 Ind. 516, it appears that Allen was duly elected auditor of Vigo County, Ind., in October 1859. After entering upon the duties of the office he became a private in the military service of the United States. On his return he claimed to be the legal officer. In deciding this question the court said (p. 522) :

"And the question now arises, did the auditor, in this case, by enlisting as a private soldier, in the army of the *United States* for three years, or during the existing war, thus disable himself? Of this we have no doubt. What did he undertake, what did he agree to do, by that enlistment? In what situation did he place himself? He placed himself in the service of the government of the *United States*, and agreed, yes, legally bound himself, to leave, not only the county of *Vigo*, but the State of *Indiana*, and remain absent, if required, for three years, devoting his entire time to the service of the *United States* in parts remote from the State of *Indiana*. This, we judicially know, because we know that the government was not enlisting soldiers to serve in *Vigo* county, nor in the State of

*Indiana;* for there was no rebellion existing within those limits to be put down by an army. *Allen* not only undertook to leave the State, and did leave it, but he further deprived himself of the power to return, of his own volition, for a period of three years. The soldiers, as we judicially know, were enlisted for the war which was being carried on in the Southern States; and while we concede the nobleness and patriotism of the spirit which prompted the defendant to enlist, still, we can not allow such considerations to control in the decision of a question of law. Legal decisions should not rest upon the impulses of the hour, but upon principles of perpetual application. The proper way to test the decision in this case is to turn ourselves back to a period prior to this war, and to suppose an officer to be recruiting for the regular army; to suppose further, that *Allen,* then the auditor of *Vigo* county, enlists for three or five years in that army and is marched off to a frontier military post of the *United States;* would any body say, in that case, that he had not abandoned the office of county auditor? Such, in law, is this case. See *Kerr* v. *Jones,* 19 Ind. 351. It could make no difference that *Allen* should afterwards, and before the expiration of the term of his enlistment, get released therefrom, that fact being a mere accident; the vacancy having once become complete by abandonment, could not be refilled by an accidental, voluntary, or forcible re-occupancy."

In Fekete v. City of East St. Louis, 315 Ill. 58, 40 A. L. R. 650, the decision of the case involved the construction of a provision of the Constitution of Illinois that no person holding any office of honor or profit under the Government of the United States should hold any office of honor or profit under the authority of that State. The Supreme Court said (p. 653):

"The question we have to determine is one of law, unaffected by sentiment. It seems not open to question that the office of captain in the United States army

is an office of honor or profit. If it is, plaintiff by his appointment to and acceptance of that office was thereby rendered ineligible to hold the office of city attorney, an office of honor or profit under the authority of this state. His acceptance of the former office was a constructive resignation or abandonment of the latter."

Under the authorities cited it seems clear that, when relator became an officer in the military service of the United States and was placed on the payroll as such, he vacated his office as Mayor of the City of Uniontown by reason of the provision above quoted in section 2 of article XII of the Constitution of Pennsylvania.

It follows that relator does not have such special interest in the office of Mayor of the City of Uniontown as to entitle him to invoke the issuance of the writ of quo warranto: Commonwealth ex rel. Schermer v. Franek, 311 Pa. 341. The motion to quash the writ must, therefore, be sustained.

### Order

And now, August 6, 1941, after consideration, it is ordered and decreed that the writ of quo warranto awarded herein July 29, 1941, be and it is hereby quashed, the costs to be paid by relator.